Jason T. Brown (NJ Bar # 35921996)
**JTB LAW GROUP, LLC**
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
Fax: (855) 582-5297
Email: jtb@jtblawgroup.com

Attorneys for Plaintiff and the Class
[Additional counsel on signature page]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAY MARSHALL, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>VERDE ENERGY USA, INC.,<br><br>        Defendant. | Civil Action No.<br><br>**Class Action Complaint** |

Plaintiff Ray Marshall ("Plaintiff"), by and through his undersigned counsel, Kohn, Swift & Graf, P.C. and JTB Law Group on behalf of himself and all other persons similarly situated, brings this Class Action Complaint against Verde Energy USA, Inc. ("Verde" or "Defendant"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by his attorneys.

## NATURE OF THIS CASE

1.     This action is brought as a class action on behalf of Plaintiff and a putative class of New Jersey consumers seeking to redress the deceptive and bad faith pricing practices of Defendant that have caused at least tens of thousands of consumers to pay considerably more for their electricity than they should otherwise have paid.

2.     Defendant has taken advantage of the deregulation of the retail electricity market in New Jersey by luring consumers into switching energy suppliers with false promises that it offers variable rates for electricity that are based on market conditions.

3.     Verde's representations are deceptive.  In fact, Defendant's variable rates are substantially higher than those otherwise available in the New Jersey energy market.  Contrary to Verde's representations and obligations, Verde consistently and improperly charges an extraordinarily high rate for electricity regardless of fluctuations in the underlying market price for electricity.  Indeed, Verde routinely charges its consumers up to almost **four times** the underlying market rate, notwithstanding Verde's representations that its variable rates "reflect" monthly wholesale electric prices.

4.     Specifically, when the market price goes down, Verde's rate remains at an inflated level several times higher than the market rate.

5.     This unfair and deceptive scheme of charging inflated electric prices while failing to pass-along decreases is intentionally designed to maximize revenue for Verde.

6.      As a result of Verde's unfair and deceptive overcharging scheme, New Jersey consumers are being fleeced millions of dollars in exorbitant charges for electricity.

7.     Plaintiff, on behalf of the class he seeks to represent, brings this lawsuit based on Verde's breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment under common law, as well as to redress Defendant's unlawful and

unconscionable consumer practices under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq*. and for violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-15.  Through its deceptive and unconscionable practices, upon information and belief, Verde bilked the class, tens of thousands of current and former customers with variable-rate electricity plans, out of millions of dollars.  Accordingly, this lawsuit seeks, *inter alia*, injunctive relief, actual damages and refunds, treble damages, punitive damages, attorneys' fees, and the costs of this suit.

## PARTIES

8.      Plaintiff Ray Marshall is a citizen of New Jersey residing in Wayne, New Jersey. Mr. Marshall was a customer of Verde, who began his service in August 2012, and as a result of Defendant's deceptive conduct, he incurred excessive charges for electricity.

9.      Defendant Verde Energy USA, Inc. is a corporation organized under the laws of the State of Delaware whose principal place of business is located at 101 Merit Seven Corporate Park, Norwalk, CT 06851.  Verde has thousands of customers in New Jersey and tens of millions of dollars in revenues.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this matter alleging violations of common law fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, the CFA and the TCCWNA under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453 and 1711 - 1715.  Plaintiff and all Class members are citizens of New Jersey, while Verde is a citizen of Delaware with its principal place of business in Connecticut and the amount in controversy exceeds $5,000,000.  This Court has personal jurisdiction over Defendant.  Defendant Verde is registered to do business in New Jersey, conducts business in

New Jersey and otherwise has sufficient contacts with New Jersey that jurisdiction over it is proper in this District.

11.     Venue is proper in this District because Plaintiff is a citizen of New Jersey, Defendant does business in New Jersey, and the transactions that are the subject of this action took place in New Jersey and had their effects in New Jersey.

**OPERATIVE FACTS**

**Background on Energy Supply Companies (ESCO's)**

12.     Prior to 1997, energy utility companies sold electricity and delivered it through their power lines to individuals and businesses.  Thus, consumers did not have a choice to buy energy from alternative suppliers.  In 1997, 17 states began to deregulate energy.  This allowed independent energy supply companies ("ESCOs") to supply electricity to homes and businesses at prices based on current market values.

13.     In an energy deregulation state (like New Jersey), the utility company is not allowed to profit from the buying and selling of energy.  Whatever the energy costs them is what they may charge the customer.  They can only profit from the delivery.  They own the wires the energy is sent through and get paid for the delivery of the energy no matter where it comes from.

14.     However, because ESCOs are not subject to the same regulations as utility companies, ESCOs are allowed to profit from the buying and selling of energy to customers.  Thus, deregulation enables energy customers to shop for electric services by separating the supply and delivery portion of these services, and opening up the supply portion to competition from ESCOs.  As a result, energy consumers could compare the cost of kilowatt-hours charged by an ESCO with those charged by their local distribution company or other ESCOs.  This supposedly enables consumers to shop around for the best price on their energy supplies.

15.     In deregulation states, ESCOs may compete to supply the energy services, but the local electric companies continue to deliver those supplies through their wires regardless of which company supplies them.  In addition, the local public utility may continue to supply metering, billing, and related administrative services to the consumer, regardless of who supplies the energy services.  Thus, the public utility continues to generate and send periodic bills directly to the consumer for the energy supplies, even after a consumer has enrolled in or "switched" to an ESCO.  The fact that the energy services for which the customer is being billed are now being provided by an ESCO is notated on the bill, often in very fine print that is easily overlooked. The bill otherwise looks the same as it did before the switch.

16.     Although deregulation may increase competition for energy supply services, because there is no regulatory authority over the prices that ESCOs charge their customers, these unregulated suppliers are not required to purchase long-term energy contracts, as required of local utility companies, that would help insulate residential customers from sharp price fluctuations.

17.     Because the prices they charge their customers are not regulated, ESCOs often choose to enter into variable rate contracts giving them the ability to change their rates to meet market conditions.  When market conditions cooperate, an ESCO is able to offer potential customers significant cost savings in order to lure them into entering into a contract.

**The History Of New Jersey's Energy Industry**

18.     In 1999, New Jersey deregulated the market for electricity supply, a major break with past policy.  Prior to deregulation, electricity was supplied and distributed solely by local utility companies.  Over the last several years, a number of states, including New Jersey[1], have

---

[1]     New Jersey consumers who do not choose to switch to an ESCO for their energy supply continue to receive their supply from their local utility.  In New Jersey, the Board of Public

begun to change the regulations in the energy industry purportedly to enhance competition between energy providers.  The notion is that competition would result in independent energy companies ("ESCOs") being more aggressive than the utility in reducing wholesale purchasing costs and thereby lower retail residential rates.

19.     ESCOs such as Verde have various options to buy electricity at wholesale for resale to retail customers in New Jersey, including: owning electricity production facilities; purchasing electricity from wholesale marketers and brokers at the price available at or near the time it is used by the retail consumer; and by purchasing electricity in advance of the time it is used by consumers, either by purchasing electricity to be used in the future or by purchasing futures and forward contracts for the delivery of electricity in the future at a predetermined price. The point of deregulation is to allow ESCOs to use these and other innovative purchasing strategies to reduce electricity costs.

20.     As part of the deregulation plan, ESCOs (like Verde) do not have to file the electricity rates they charge with the New Jersey Board of Public Utilities ("NJBPU") or the method by which they set their rates.

21.     If a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility.  The customer's existing utility continues to bill the customer for both the energy supply and delivery costs.  The only difference to the customer is which company sets the price for the customer's energy supply.

22.     After a customer switches to an ESCO, the customer's energy supply charge—based either on a customer's kilowatt-hour (for electricity)—is calculated using the supply rate

Utilities ("NJBPU") holds market-based auctions that purchase electricity on behalf of such customers; the utilities then charge these customers a rate based upon the market-based auction outcome.  A third-party consultant on behalf of the NJBPU manages the auctions, and the bidding processes and results are made publicly available.  As a result, these auctions reflect market-determined prices.

charged by the ESCO and not the regulated rate charged by customer's former utility. The supply rate charged is itemized on the customer's bill as the number of kilowatt-hours ("kWh") multiplied by the rate. For example, if a customer uses 300 kWh at a rate of 11.0¢ per kWh, the customer will be billed $33.00 (300 times $.11) for his/her energy supply.

23.     Defendant takes advantage of the deregulation and the lack of regulatory oversight in the energy market to deceptively charge New Jersey consumers exorbitant rates for electricity. In theory, energy deregulation allows consumers to shop around for the best energy rates. However, Defendant exploits the deregulated market by using the false promise of variable rates for electricity that are based on market conditions in order to deceive consumers into purchasing energy from it. In fact, Defendant's rates are substantially higher than rates charged by other ESCOs or local utilities and bear no relation to other market rates or the wholesale cost of electricity.

24.     The end result is that, instead of benefitting from switching to Verde, a typical customer loses out – to the tune of hundreds or even thousands of dollars per year. Thus, Verde deceptively causes its customers to pay considerably more for electricity services than they should have and otherwise would have paid.

**Plaintiff Marshall's Experience**

25.     In early 2012, Plaintiff was solicited by Discount Power to switch his electricity service from his local utility, PSE&G, with the promises that he would save money on his electricity bills if he switched. Based on these promises, Plaintiff made the switch shortly thereafter.

26.     Plaintiff's service with Discount Power was short-lived. In July 2012, Plaintiff received a notice in the mail that his electricity service was being assigned from Discount Power to Verde.

27.     Plaintiff also received in the mail a Welcome Letter from Verde, dated July 31, 2012, in which Verde represented that they "look forward to saving you money on your monthly electric bill in the months to come."  Verde also promised in their solicitation letter that they were lowering Plaintiff's Discount Power rate of $0.114704/KWH to Verde's rate of $0.1065/KWH.  *See* Verde Welcome Letter, attached as Exhibit "A."

28.     The representation that Verde would offer Plaintiff a competitive market-based rate was reinforced and confirmed by Defendant's solicitation in the form of a standard Terms of Service, which was contained on the back of the above-referenced Welcome Letter that was provided to Plaintiff, which he read.  The Terms of Service (attached as Exhibit "B") represents, "Price: Customer will receive electricity from Verde at a variable generation rate.  Customer agrees and understands that the rate may fluctuate monthly with market conditions."

29.     Based on Verde's representations, Plaintiff decided to switch to Verde for electricity in August 2012.  As a result, Plaintiff was placed on Verde's variable rate plan.

30.     Verde's "Terms of Service" makes an express link between the Variable rate charged by the company and the underlying wholesale market rate, stating the variable rate "may fluctuate monthly with market conditions."

31.     As such, a reasonable consumer, like Plaintiff Marshall, would understand that Verde's Variable rates fluctuate in a manner correlated with the underlying wholesale market rate, and that, although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased, enabling consumers to take advantage of market lows.

32.     Instead, and contrary to reasonable consumer expectation, Verde used its Variable rates as a pure profit center, increasing the rates charged to Plaintiff and class members when wholesale prices rose, but staying at a level almost ***four times*** the wholesale market rates when the wholesale prices fell.

8

33.     Mr. Marshall began paying Defendant's variable rate in August 2012.  In December 2017, he canceled his electricity service with Defendant.[2]  The following table is a representative sampling[3] which identifies the billing periods during this time, the variable rates Defendant charged Plaintiff, the corresponding rates PSE&G would have charged for electricity, and the then-prevailing wholesale rate for electricity:

| Billing Period End Date[4] | Verde's Rate ($/kWh) | Utility Rate[5] ($/kWh) | Wholesale Rate[6] ($/kWh) |
|---|---|---|---|
| 10/14/2016 | $0.1799 | $0.1184 | $0.0360 |
| 11/14/2016 | $0.1799 | $0.1161 | $0.0398 |
| 12/15/2016 | $0.1899 | $0.1160 | $0.0570 |
| 1/18/2017 | $0.1999 | $0.1186 | $0.0569 |
| 2/15/2017 | $0.1999 | $0.1190 | $0.0464 |
| 3/17/2017 | $0.1949 | $0.1194 | $0.0560 |
| 4/18/2017 | $0.1949 | $0.1217 | $0.0515 |
| 5/17/2017 | $0.1949 | $0.1263 | $0.0507 |
| 6/16/2017 | $0.1949 | $0.1248 | $0.0468 |

[2]     When Plaintiff canceled his service, he was informed by Verde that it will take two billing cycles for Verde to process the cancellation.  As a result, Plaintiff continues to pay Verde's variable rate for the December 2017 and January 2018 billing periods.

[3]     Upon information and belief, Verde overcharged Plaintiff by at least thousands of dollars in total for electricity as compared to what PSE&G was charging.

[4]     Billing Period begins approximately thirty days prior.

[5]     This is the "Price to Compare" provided on Plaintiff's billing invoices.

[6]     The Wholesale Rate was calculated by adding the Weighted Locational Marginal Pricing (LMP) and other PJM Charges, such as capacity, ancillary services, etc.

| | | | |
|---|---|---|---|
| 7/18/2017 | $0.1949 | $0.1250 | $0.0516 |
| 8/16/2017 | $0.1949 | $0.1190 | $0.0452 |
| 9/15/2017 | $0.1949 | $0.1131 | $0.0439 |
| 10/16/2017 | $0.1949 | $0.1067 | $0.0470 |
| 11/14/2017 | $0.1949 | $0.1084 | $0.0492 |
| 12/15/2017 | $0.1999 | $0.1197 | $0.0738 |

34.     That Defendant's variable rate is not in fact a rate that fluctuates with market conditions is demonstrated by the fact that Defendant's rate was significantly higher than PSE&G's rates.  In fact, there are numerous months where Defendant's rate was *80% higher than PSE&G's rate*.  Furthermore, there are numerous months where Defendant's rate was *more than triple the wholesale rate*.

35.     PSE&G's rates are reflective of market conditions because they are based on publicly held auctions.   The electric utilities, on behalf of New Jersey, hire a consultant to run an annual auction to purchase from suppliers/generators.  The auction purchases one-third of the annual electricity demand for three years for consumers that do not choose a third-party supplier.  This is referred to as a rolling three-year auction.

36.     While PSE&G and Verde may not purchase electricity in precisely the same manner, over time, the costs they incur should be commensurate.  In fact, there is a highly competitive electricity market where Defendant can purchase electricity for future use (either in a physical purchase of electricity for future use or as a swap transaction), and therefore, its cost

for purchasing electricity reflects market prices and conditions, albeit over a longer term than daily spot rates.  Similarly, PSE&G and other New Jersey utilities purchase electricity in rolling auctions that cover periods of more than just short-term daily purchases. Therefore, while PSE&G's rates may not precisely match Verde's rate, they should be commensurate.

37.     That Defendant's rates do not reflect market costs for wholesale electricity is also demonstrated by the disconnect between changes in wholesale electricity prices and Defendant's costs.  While the wholesale (PJM spot market) rate might show more short-term fluctuations than Defendant's costs, overtime, the wholesale (PJM spot market) rate is an accurate reflection of wholesale market costs.

38.     The cost of wholesale electricity is the primary component of the non-overhead costs that Defendant incurs.  The other factors Defendant identifies in the Terms of Service other than the wholesale cost of electricity that affect its variable rate (such as applicable taxes and charges) are relatively small in terms of the overall costs Defendant incurs to provide retail electricity.  Therefore, these other cost factors cannot explain the drastic increases in Defendant's variable rate or the reason its rates are disconnected from changes in wholesale costs.

39.     Thus, Defendant's statements with respect to the electricity rates it will charge are materially misleading because consumers do not receive a price that fluctuates based on market conditions, like wholesale costs and competitor pricing.  Instead, consumers are charged rates that are substantially higher and untethered from the market conditions.  Defendant intentionally fails to disclose this material fact to its customers because no reasonable consumer who knows the truth about Defendant's exorbitant rates would choose Defendant as an electricity supplier.

40.     Defendant's statements and omissions regarding its electricity rates are materially misleading because the most important consideration for any reasonable consumer when choosing an energy supplier is price.

11

41.     Defendant's misstatements and omissions caused injury to Plaintiff Marshall because he would not have enrolled in Defendant's service plan but for its false misrepresentations.  Had Plaintiff known that the rates he would be charged by Defendant would be substantially higher than his local utility provider and bear no relation to other market rates or the wholesale cost of electricity, he would not have made the decision to switch.

42.     Defendant knows full well that it charges a rate that is unconscionably high, and the misrepresentations it makes with regard to the rate being based on market conditions were made for the sole purpose of inducing consumers to sign up for Defendant's electricity supply so that it can reap outrageous profits to the direct detriment of New Jersey consumers without regard to the consequences that high utility bills cause such consumers.  As such, Defendant's actions were actuated by actual malice or accompanied by wanton and willful disregard for consumers' well-being.

43.     Plaintiff Marshall paid Verde's exorbitant variable electricity rates and thereby suffered an ascertainable loss.  Defendant's conduct as alleged above was a substantial factor in causing Plaintiff's losses, which were a reasonably foreseeable result of that conduct.

44.     Similarly, other Class members have routinely paid substantially more for their energy supplies since switching to Defendant's electricity plans.

45.     Verde's unfair and deceptive scheme as alleged herein constitutes a continuing violation over the course of each and every time Plaintiff (or any other class member) was overcharged for electricity.  Further, Verde actively concealed its wrongful conduct by maintaining to Plaintiff and other members of the class, in Verde's marketing, invoicing, and other communications directed to consumers, that the prices Verde charged for electricity were the result of competitive market forces when, in reality, they were the result of Verde's fraud. Plaintiff and other members of the class could not discover through reasonable diligence the

nature of Verde's wrongful conduct earlier by virtue of Verde's active concealment of its wrongdoing.

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> **All persons enrolled in a Verde Energy USA, Inc., variable rate electric plan in connection with a property located within New Jersey at any time within the applicable statutes of limitations preceding the filing of this action through and including the date of class certification (the "Class").**

47.     Plaintiff reserves the right to modify or amend the definition of the proposed Class or to propose sub-classes as might be necessary or appropriate.

48.     Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; and any officer, director, legal representative, predecessor, successor, or assignee of Defendant.

49.     This action is brought as a class action for the following reasons:

a.     The Class consists of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.     There are questions of law or fact common to the Class that predominate over any questions affecting only individual members, including:

i.     whether Defendant violated N.J.S.A. 56: 8-1 et seq.;

ii.     whether Defendant breached its contract with New Jersey consumers by charging variable rates not based on market conditions;

iii.     whether Defendant's actions and omissions violated the New Jersey TCCWNA, N.J. Stat. Ann. § 56:12-15;

        iv.      whether Defendant breached the covenant of good faith and fair dealing by exercising its unilateral price-setting discretion in bad faith, *i.e.*, to price gouge;

        v.      whether Plaintiff and the Class have sustained damages and, if so, the proper measure thereof; and

        vi.      whether Defendant should be enjoined from continuing to charge variable rates not based on market conditions;

    c.      The claims asserted by Plaintiff are typical of the claims of the members of the Class;

    d.      Plaintiff will fairly and adequately protect the interests of the Class, and Plaintiff has retained attorneys experienced in class and complex litigation, including class litigation involving consumer protection and ESCOs;

    e.      Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

    f.      Defendant has acted on grounds that apply generally to the Class, namely representing that its variable rates are reflective of market conditions, *i.e.*, competitive and reflective of the wholesale market, when Defendant's rates are in fact substantially higher, so that final injunctive relief prohibiting Defendant from continuing its deceptive practices is appropriate with respect to the Class as a whole;

    g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

        i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, Defendant's violations of their legal obligations will continue without remedy,

additional consumers and purchasers will be harmed, and Defendant will continue to retain its ill-gotten gains;

        ii.      It would be a substantial hardship for most individual members of the Class if they were forced to prosecute individual actions;

        iii.     When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Class;

        iv.     A class action will permit an orderly and expeditious administration of Class claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

        v.      The lawsuit presents no difficulties that would impede its management by the Court as a class action; and

        vi.     Defendant has acted on grounds generally applicable to Class members, making class-wide monetary and injunctive relief appropriate.

50.    Defendant's violations of N.J.S.A. 56: 8-1 *et seq*., N.J. Stat. Ann. § 56:12-15, and the common law are applicable to all members of the Class, and Plaintiff is entitled to have Defendant enjoined from engaging in illegal and deceptive conduct in the future.

### CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. 56: 8-1 *et seq.*)

51.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52.    The Consumer Fraud Act prohibits, *inter alia*:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise. . . .

N.J.S.A. § 56:8-2.

53.     Plaintiff and other members of the class are "persons" within the meaning of

N.J.S.A. 56:8-1(d).

54.     Defendant's conduct alleged herein constitutes a "sale" within the meaning of

N.J.S.A. 56:8-1(e).

55.     Defendant Verde has engaged in unfair, unlawful and deceptive acts in trade and

commerce which have the capacity and tendency to deceive and, in fact, did deceive Plaintiff and

the class, and damaged Plaintiff and class members.

56.     Defendant's misrepresentations and false, deceptive, and misleading statements

and omissions with respect to the variable rates it charges for electricity, as described above,

constitute affirmative misrepresentations in connection with the marketing, advertising,

promotion, and sale of electricity in violation of the Consumer Fraud Act.

57.     Defendant's false, deceptive, and misleading statements and omissions would

have been material to any potential consumer's decision to purchase electricity from Defendant.

58.     Defendant also failed to inform customers that its variable rates for electricity are

substantially higher than those based on the market conditions in the electricity market and do

not reflect the wholesale cost of purchasing electricity.  That information would have been

material to any consumer deciding whether to purchase electricity from Defendant.

59.     Defendant further deceptively and consciously misrepresented the most

determinative factors it uses to set variable rates.

60.     Defendant knew at the time it promised prospective customers that they would be

charged a variable rate based on market conditions that this promise was false.

16

61.     Defendant made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements.

62.     Defendant's intentional concealments were designed to deceive current and prospective variable rate customers into believing that rates will be commensurate with market conditions and the specified factors in the Terms & Conditions.  Defendant benefits from reliance and deprives consumers from informed purchasing decisions and savings.

63.     Defendant's affirmative conduct and omissions constitute unlawful practices beyond a mere breach of contract.  Rather, Defendant's practices are unconscionable and outside the norm of reasonable business practices.

64.     Plaintiff and the other members of the Class entered into agreements to purchase electricity from Defendant for personal use and suffered ascertainable losses as a direct and proximate result of Defendant's actions in violation of the Consumer Fraud Act.

65.     As a consequence of Defendant's wrongful actions, Plaintiff and the other members of the Class suffered an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged had Defendant charged a rate based on market conditions as specified in the Terms of Service, or had they not switched to Defendant from their previous supplier.

66.     Plaintiff and other members of the Class suffered an ascertainable loss caused by Defendant's misrepresentations and omissions because they would not have entered into an agreement to purchase electricity from Defendant if the true facts concerning their rates had been known.

67.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for trebled compensatory damages, punitive damages, attorneys' fees, and the costs of this suit. N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

68.     Defendant knows full well that it charges a rate that is unconscionably high, and the misrepresentations it makes with regard to the rate fluctuating with market conditions were made for the sole purpose of inducing consumers to sign up for Defendant's electricity supply so that it can reap outrageous profits to the direct detriment of New Jersey consumers without regard to the consequences high utility bills cause such consumers.  As such, Defendant's actions were unconscionable and actuated by bad faith, lack of fair dealing, actual malice, or accompanied by wanton and willful disregard for consumers' well-being.  Defendant is therefore additionally liable for punitive damages, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### BREACH OF CONTRACT

69.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-50 above as if fully set forth herein.

70.     Plaintiff and the other members of the Class entered into valid contracts with Defendant for the provision of electricity.

71.     Pursuant to the Agreement, Defendant agreed to charge a variable rate for electricity that may fluctuate based on market conditions.

72.     Pursuant to the Agreement, Plaintiff and the other members of the Class paid the variable rates charged by Defendant for electricity.

73.     However, Defendant failed to perform its obligations under the Agreement to charge rates based primarily upon whole electricity costs and additional market conditions. Indeed, Defendant charged a variable rate for electricity that was untethered from the market conditions upon which the parties agreed the rate would be based.

74.     Plaintiff and the other members of the Class were damaged as a result because they were billed, and they paid, a charge for electricity that was higher than they would have been had Defendant based its rates on the factors agreed upon.

75.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of such damages to be determined at trial, plus attorneys' fees.

<u>**THIRD CAUSE OF ACTION**</u>
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

76.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-50 above as if fully set forth herein.

77.     Every contract in New Jersey contains an implied covenant of good faith and fair dealing in the performance and enforcement of the contract.  The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

78.     Verde's Terms of Service with customers gives Verde unilateral discretion concerning the monthly rates charged under Variable rate contracts and any increases or decreases in the rate to reflect the changes in the wholesale power market.

79.     Plaintiff reasonably expected that the variable rates for electricity would, notwithstanding Defendant's profit goals, reflect the market and wholesale prices for electricity and that Defendant would refrain from price gouging.  Without these reasonable expectations, Plaintiff and other Class members would not have agreed to buy electricity from Defendant.

80.     Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its unilateral rate-setting discretion to price gouge and frustrate Plaintiff and other Class members' reasonable expectations that the variable rates for electricity would be commensurate with market conditions.

19

81.     As a result of Defendant's breach, Defendant is liable to Plaintiff and other members of the Class for actual damages in an amount to be determined at trial, and attorneys' fees.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE TRUTH-IN-CONSUMER CONTRACT, WARRANTY, AND NOTICE ACT ("TCCWNA")
## (N.J. Stat. Ann. § 56:12-15)

82.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-50 above as if fully set forth herein.

83.     Plaintiff and those similarly situated are "consumers" within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15.

84.     Defendant Verde is a "seller" within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15 and -17.

85.     Defendant violated TCCWNA with respect to Plaintiff and the Class by inducing Plaintiff and the Class Members to switch electric suppliers to Verde using tactics that violate the CFA, as alleged above and in the First Cause of Action.  Thus, Defendant violated Plaintiff's and the Class Members' clearly established legal rights or responsibilities of Defendant under the CFA and, therefore, Defendant violated TCCWNA.

86.     As a result of Defendant's violations of TCCWNA, Plaintiff and those similarly situated are entitled to statutory damages of not less than $100 for each of Defendant's TCCWNA violations, as provided by N.J.S.A. 56:12-17.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT

87.     Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-50 above as if fully set forth herein.

88.     By engaging in the conduct described above, Defendant has unjustly enriched itself and received a benefit beyond what was contemplated in the contract, at the expense of Plaintiff and the other members of the Class.

89.     It would be unjust and inequitable for Defendant to retain the payments that Plaintiff and the Class made for excessive electricity charges.

90.     By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the Class for the damages that they have suffered as a result of Defendant's actions, the amount of which shall be determined at trial, plus attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that the Court should enter judgment against Defendant as follows:

1.     Certifying this matter as a class action for money damages pursuant to Fed. R. Civ. P. 23(b)(3);

2.     Appointing Plaintiff as class representative, and appointing Plaintiff's attorneys as class counsel;

3.     Awarding compensatory and punitive damages in favor of Plaintiff and the other Class Members against Defendant for all damages sustained as a result of Defendant's wrongdoing in an amount to be determined at trial;

4.     Awarding Plaintiff and the Class Members the maximum civil penalties under the TCCWNA, pursuant to N.J.S.A. 56:12-17;

5.     Awarding Plaintiff and the Class Members actual damages, compensatory damages and treble damages pursuant to the CFA at N.J.S.A. 56:8-19;

6.     Awarding Plaintiff and the Class their reasonable attorneys' fees and costs pursuant to the CFA at N.J.S.A. 56:8-19 and TCCWNA at N.J.S.A. 56:12-17;

7.     Awarding pre-judgment and post-judgment interest and costs of suit; and

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated: January 31, 2018

Respectfully Submitted By:

/s/ Jason T. Brown_____
Jason T. Brown (NJ Bar # 35921996)
Nicholas Conlon (NJ Bar # 34052013)
**JTB LAW GROUP, LLC**
155 2nd Street, Suite 4
Jersey City, NJ 07302
Phone: (201) 630-0000
Fax: (855) 582-5297
Email:  jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com

Jonathan Shub (*Pro Hac Vice Forthcoming*)
Kevin Laukaitis (*Pro Hac Vice Forthcoming*)
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA  19107-3304
(215) 238-1700 – phone
(215) 238-1968 – facsimile
Email: jshub@kohnswift.com
klaukaitis@kohnswift.com

*Attorneys for Plaintiff and the Putative Class*