# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

RAY MARSHALL, individually and on behalf of all others similarly situated,

*Plaintiff,*

v.

VERDE ENERGY USA, INC.,

*Defendant.*

Civil Action No. 18-1344 (JMV) (JBC)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This putative class action alleges deceptive and bad faith practices that resulted in consumers paying more for electricity. Presently before the Court is a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Verde Energy USA, Inc. ("Verde" or "Defendant"). D.E. 13. Plaintiff Ray Marshall ("Marshall" or "Plaintiff") filed a brief in opposition (D.E. 29), to which Defendant replied (D.E. 30).[1] After briefing on the motion was complete, both parties filed notices of supplemental authority and responses. D.E. 31-33, 42-47. Plaintiff then filed a motion to strike Defendant's response to its July 5, 2018 notice of supplemental authority, D.E. 34, which Defendant opposed. D.E. 35. The Court reviewed the parties' submissions and decided the motions without oral argument pursuant to Fed. R. Civ. P.

---

[1] Defendant's brief in support of its motion to dismiss (D.E. 13-1) will be referred to as "Def. Br."; Plaintiff's opposition (D.E. 29) will be referred to as "Plf. Opp."; and Defendant's reply of its motion (D.E. 30) will be referred to as "Def. Reply."

78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** and Plaintiff's motion to strike is **DENIED**.

## I. FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

In New Jersey, a utility company cannot profit from buying and selling energy; it can only profit from delivery. Compl. at ¶ 13, D.E. 1. Following energy deregulation in New Jersey, however, an independent energy supply company ("ESCO") can profit by buying and selling energy to customers. *Id.* ¶ 14. ESCOs compete to supply energy services in deregulated states, but local utility companies continue to actually deliver the supply. *Id.* ¶ 15. Local utility companies may also supply "metering, billing, and related administrative services to the consumer" regardless of whether an ESCO supplies the energy. *Id.*

Defendant is an ESCO that supplies power to residents in New Jersey. *Id.* at ¶¶ 19, 21. Plaintiff decided to switch from his local utility, PSE&G, to Discount Power, an ESCO, because of Discount Power's representations that Plaintiff would save money on his electricity bill. *Id.* ¶ 25. A few months after making the switch, Plaintiff was notified that his electricity service was being assigned from Discount Power to Defendant. *Id.* ¶ 26. Shortly after, Plaintiff received a "Welcome Letter" from Defendant, which stated that it "look[ed] forward to saving you money on your monthly electric bills in the months to come." *Id.* ¶ 27, Ex. A. The Welcome Letter adds that Defendant has "a strong focus on enabling our customers to save money on their monthly

---

[2] The factual background is taken from Plaintiff's Complaint (D.E. 1), as well as the exhibits attached to the Complaint. D.E. 1-2, 1-3. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the Complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In this motion, the exhbits are referenced in the Complaint, and the parties agree that both documents are authentic and critical to deciding the current motion.

electric bills and in the past three years have helped our over 250,000 customers save an estimated $17 million on their bills." *Id.*, Ex A. Plaintiff does not allege that the representation about past savings was false.

Defendant's Terms of Service for Discount Energy Group Variable Rate Customers (the "Terms of Service" or "Agreement") was contained on the back of the Welcome Letter. In the Terms of Service, Defendant explained that Plaintiff would "receive electricity from Verde at a variable generation rate." The Agreement added that "the rate may fluctuate monthly with market conditions." *Id.* ¶ 28, Ex. B. The Agreement continued that Plaintiff "may compare price terms by looking at the rates posted on Verde's website and on Customer's monthly bill." *Id.*, Ex. B. In fact, Plaintiff's billing invoices appeared to include a "Price to Compare" section that compared Verde's current rate with PSE&G's rate for the month. *Id.* ¶ 33 n. 5. The Agreement further directed Plaintiff to visit Defendant's website "for current rates and updates." *Id.* Plaintiff was also informed that his monthly electric bill would still be provided by PSE&G. *Id.* Finally, the Agreement provided that either Plaintiff or Defendant "may cancel this Agreement at any time and for any reason without penalty." *Id.*, Ex. B ¶ 3. Based on these representations, Plaintiff switched to Defendant for electricity in August 2012 and was placed on Defendant's variable rate plan. *Id.* ¶ 29. Plaintiff was a Verde customer from August 2012 to December 2017. *Id.* ¶ 33.

Plaintiff asserts that "[a] reasonable consumer . . . would understand that Verde's [v]ariable rates fluctuate in a manner correlated with the underlying wholesale market rate, and that although prices would go up when wholesale prices rose, they would also go down when wholesale prices decreased." *Id.* ¶ 31. Plaintiff alleges that Verde customers are actually charged rates that are "untethered from the market conditions." *Id.* ¶ 39. Specifically, Plaintiff maintains that Defendant increased the rates charged to Plaintiff and class members when wholesale prices rose but kept

3

prices level when wholesale prices fell. *Id.* ¶ 32. Plaintiff alleges that "there are numerous months where Defendant's rate was more than triple the wholesale rate." *Id.* ¶ 34. In addition, Plaintiff contends that Verde's rates were, at times, more than eighty percent higher than PSE&G's rates. PSE&G's rates, Plaintiff alleges, are reflective of market conditions because they are based on publicly held auctions. *Id.* ¶ 34. As a result, "Verde used its [v]ariable rates as a pure profit center." *Id.* ¶ 32. Of note, although Plaintiff asserts that PSE&G's rates are reflective of market conditions, PSE&G's rates were usually at least twice as high as the wholesale rate and often higher. *Id.* ¶ 33. Also, as noted, Plaintiff appears to assert that PSE&G's rates were provided on his invoices, meaning that he could perform an easy comparison between what he was being charged and what PSE&G was charging. *Id.* ¶ 33 n. 5.

Plaintiff filed this putative class action complaint on January 31, 2018 on behalf of all Verde variable rate electric plan customers in New Jersey within the applicable statute of limitations. *Id.* at ¶ 46. The Complaint asserts the following claims: (1) violation of the New Jersey Consumer Fraud Act ("CFA" or the "Act"); (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) violation of the Truth-In-Consumer Contract, Warranty, and Notice Act ("TCCWNA"); and (5) unjust enrichment. *Id.* ¶¶ 51-90. Defendant filed the instant motion to dismiss for failure to state a claim on April 16, 2018. D.E. 13.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

### III. ANALYSIS

#### 1. The New Jersey Consumer Fraud Act (Count One)

The CFA "seeks to protect consumers who purchase goods or services generally sold to the public at large." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006). To state a CFA claim, a plaintiff must allege "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007). Unlawful conduct is defined by the Act as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. 56:8-2. As "remedial legislation," the Act "should be construed liberally." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund*, 192 N.J. at 389.

Among other things, Defendant argues that Plaintiff's CFA claim must be dismissed because the alleged wrongful conduct is undercut by the Terms of Service. Def. Br. at 13-18. When a CFA claim is based on a valid, written contract, "a court will dismiss [the] claim" if the conduct alleged is "expressly authorized" by the terms of that contract. *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015); *see also Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010) (affirming dismissal of CFA where alleged wrongful conduct was expressly permitted by agreement at issue). Moreover, when a CFA claim is based on a breach of contract, Plaintiff must allege a "substantial aggravating circumstance," demonstrating that the defendant's behavior "stands outside the norm of reasonable business practice in that it will victimize the average consumer." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). "Whether a business practice is unfair is a question for the jury, but if the claim is founded on written statements, then the court must make a legal decision whether the practice is unlawful in light of the writings." *Urbino*, 2015 WL 4510201, at *3 (citing *Hassler*, 374 F. App'x. at 344).

Numerous courts have addressed similar motions to dismiss CFA claims relating to the provision of gas and electricity services by ESCOs. *See, e.g., Coda v. Constellation Energy Power Choice, LLC*, No. 17-3437, 2018 WL 3201796, at *3-7 (D.N.J. June 29, 2018); *Urbino*, 2015 WL 4510201, at *4-5; *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *5-6 (D.N.J. Sept. 4, 2012); *see also Hamlen v. Gateway Energy Servs. Corp.*, No. 16-3526, 2017 WL 892399, at *1 (S.D.N.Y. Mar. 6, 2017), *Windley v. Starion Energy, Inc.*, No. 14-9053, 2016 WL 197503, at *2 (S.D.N.Y. Jan. 8, 2016). In *Urbino*, for example, the plaintiff entered into a variable-rate contract with the defendant, which stated that rates were subject to change at the discretion of the defendant. In addition, the defendant did not specifically reference the potential savings or

make any guarantees. *Urbino*, 2015 WL 4510201, at *4. Over a year later, the plaintiff determined that the defendant's electric rates for two recent months were sixty percent higher than those of PSE&G. *Id.* at *1. As a result, the plaintiff sued the defendant for, among other things, a violation of the CFA. *Id.* at *3. The *Urbino* court determined that the CFA claim was not sufficiently pled. Judge Shipp reasoned that the defendant had not made any material misrepresentations or omissions because the written agreement expressly permitted the defendant the discretion to change its rates and adequately disclosed the defendant's business practices. *Id.* at *4-5.

In this instance, the Terms of Service state that Plaintiff "agrees and understands that the rate *may* fluctuate monthly with *market conditions*." Compl. ¶ 28. The term "market conditions" is not defined, and Plaintiff attempts to limit it to one aspect of market conditions, that is, the underlying wholesale market rate. Yet, the Agreement does not so define market conditions. More importantly, the Agreement does not mandate that Verde actually tie its monthly rates to market conditions. Instead, the Agreement uses the word "may" rather than "will." While the Welcome Letter does indicate that Defendant looks forward to saving Plaintiff money, the Terms of Service does not guarantee any savings. Thus, the alleged wrongful conduct was not prohibited by the Terms of Service and Plaintiff fails to allege any substantial aggravating circumstances.

As recognized by Plaintiff, some courts in the district have recently denied motions to dismiss a CFA claim asserted against an ESCO. Plaintiff relies heavily on *Melville v. Spark Energy*, No. 15-8706, 2016 WL 6775635, at *2-4 (D.N.J. Nov. 15, 2016). Like here, the contract in *Melville* stated that the variable rate may change monthly "according to market conditions." *Id.* at *1. *Melville*, however, is distinguishable. In *Melville*, Judge Kugler recognized that the complaint needed to allege sufficiently aggravating circumstances to plausibly state a CFA claim. To this end, Judge Kugler found that puffery was not actionable, observing that puffery was

comprised of "vague, highly subjective claims" rather than "specific, detailed factual assertions." *Id.* at *3 (internal quotations and citation omitted). Thus, claims of "low, competitive rates," "substantial" or "great savings," and "exceptional value," were "too vague to constitute a violation of the NJCFA." *Id.* (citing *Urbino*, 2015 WL 4510201, at *5). But the *Melville* court determined that the defendant ESCO's "representations that customers will pay less in comparison to their local energy supplier and average out over time" were specific enough and not puffery. *Id.* at *4. In addition, a sales representative for the defendant ESCO promised Melville that he would save a minimum of ten percent on his energy bills. Thus, the plaintiff's factual allegations were sufficient to survive a motion to dismiss in *Melville*. *Id.*

In this instance, Plaintiff only relies on the single statement about cost saving from the Welcome Letter, that Verde "look[s] forward to saving you money on your monthly electric bill in the months to come." Compl. ¶ 27. This type of general conclusory statement was rejected by Judge Kugler in *Melville*. *Melville*, 2016 WL 6775635, at *4. An unlike the plaintiff in *Melville*, Verde did not make any additional representations regarding Plaintiff's potential savings or savings vis-à-vis Plaintiff's local energy supplier. As a result, *Melville* does not support Plaintiff's argument. Plaintiff fails to adequately plead a claim under the CFA. Count One is dismissed.

### 2. Breach of Contract (Count Two)

Verde contends that the breach of contract claim should be dismissed because Plaintiff fails to plead that Verde breached any actual obligations under the Terms of Service. Def. Br. at 21-25. To state a claim for breach of contract, plaintiff must allege (1) the existence of a contract; (2) breach of the contract (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *Faistl*, 2012 WL 3835815 at *7. "The plaintiff must also specifically identify portions of the contract that were allegedly breached." *Id.*

Plaintiff does not plausibly plead a breach of the Agreement. Plaintiff pleads that Verde failed to perform its contractual obligation to "charge rates based primarily upon whole electricity costs and additional market conditions" and that Verde's rates were "untethered from the market conditions upon which the parties agreed the rate would be based." Compl. ¶ 73. As with the CFA claim, the Court does not agree that the phrase "the rate *may* fluctuate monthly with market conditions" contractually obligations Verde to base its rates on wholesale conditions, market rates, or other ESCO's rates. Additionally, the Agreement does not guarantee savings or competitive pricing, even though Plaintiff now attempts to read competitive pricing into the contract.

In his September 6, 2018 notice of supplemental authority, Plaintiff cited *Gorecki v. Clearview Electric, Inc.*, 338 F. Supp. 3d 470 (W.D. Pa. 2018). D.E. 42. In *Gorecki*, Plaintiff asserts, the court denied the defendant's motion to dismiss a "nearly identical breach of contract claim against an electric generation supplier[.]" *Id.* The contract at issue in *Gorecki*, however, contained a critical difference – the sales agreement expressly stated that the plaintiff's rate would be "based on wholesale market conditions." *Gorecki*, 338 F. Supp. 3d at 474. In fact, the *Gorecki* court explicitly distinguished a Third Circuit case that affirmed the dismissal of a breach of contract claim because the contract stated, like the Agreement here, that "the Variable Rate *may* change in response to market conditions."³ *Id.* (emphasis added) (quoting *Orange v. Starion Energy PA, Inc.*, 711 F. App'x 681, 682 (3d Cir. 2017)).⁴ Consequently, the Court views *Gorecki*

---

³ Another difference between *Gorecki* and the current matter is that here, Defendant indicated that its rate may fluctuate based on market conditions in general. In *Gorecki*, the defendant indicated that its rate would be based on *wholesale* market conditions. *Id.* at 472. Plaintiff attempts to define "market conditions" as "wholesale" market conditions, but the "wholesale" limitation is not in the Agreement.

⁴ *Orange* also contained a significant factual difference from the present matter. There, the claim was based on Pennsylvania law, which required "that an energy supplier's contract include a

as actually supporting the conclusion that Plaintiff fails to adequately plead a breach of contract claim.

Plaintiff also filed an additional notice of supplemental authority directing the Court to *Mercado v. Verde Energy USA, Inc.*, No. 18-2068, 2019 WL 978531 (N.D. Ill. Feb. 28, 2019). D.E. 46. The contract in *Mercado* stated that the variable rate "may change monthly with market conditions." *Mercado*, 2019 WL 978531, at *2. There, the court denied the defendant's motion to dismiss the breach of contract claim, concluding that the contract promised that, if the variable rate changed, it would change based on market conditions. *Id.* *Mercado* is not binding authority on this Court, as it is an unpublished district court decision outside the Third Circuit. The Court also disagrees with the holding in *Mercado*. As discussed above, the word "may" in the Terms of Service means that Verde could, but was not required to, consider market conditions when setting Plaintiff's rate. Moreover, the *Mercado* court's conclusion goes against the weight of authority in the Third Circuit.

### 3. The Implied Covenant of Good Faith and Fair Dealing (Count Three)

Defendant argues that Plaintiff fails to plausibly plead a breach of the duty of good faith and fair dealing claim because the alleged wrongful conduct is encompassed by the Terms of Service and was not different from that which underlies the alleged breach of contract. Def. Br. at 26. The implied covenant of good faith and fair dealing is a "component of every contract that requires both parties to a contract act in good faith[,]" that is, they must "adher[e] to community standards of decency, fairness, or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109 (2007) (internal citations omitted). "[A] breach of the covenant of good faith and fair dealing

---

statement informing the customer on what basis prices will vary." 711 F. A'ppx at 683 (quoting 52 Pa. Code § 54.5(c)(2)(i)-(ii) (2007) (amended 2014)). Here, Plaintiff has not alleged that New Jersey law had a similar requirement.

must not arise out of the same conduct underlying an alleged breach of contract action," however, in certain circumstances, a plaintiff is permitted to plead alternative claims. *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *6-7 (D.N.J. June 27, 2017).

In Count Three, Plaintiff alleges that if Verde did not breach the express terms of the Agreement, which gave Verde unilateral discretion concerning Plaintiff's monthly rate, Verde breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its discretion to adjust prices. Compl. ¶ 80. Thus, it is possible that while Verde did not breach an express term of the contract, Verde violated the implied covenant contained in the contract. Consequently, Count Three is appropriately construed as an alternative to Plaintiff's claim for breach of contract.

Defendant also maintains that Plaintiff's implied covenant claim must be dismissed because Plaintiff fails to allege sufficient facts to show that Verde acted in bad faith. Def. Br. at 26-27. When a party has the right to exercise discretion under a contract, the discretion must not be used for an improper motive, or "arbitrarily, unreasonably, or capriciously." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage . . . are of no legal significance."). Examples of bad faith conduct that supports an implied covenant claim are (1) purposefully hiding vital information to ensure that the plaintiff continued to perform under the contract even though the defendant knew it was going to terminate the plaintiff's exclusive distributorship arrangement, *Bak-A-Lum Corp. v. Alcoa Bulding Prods.*, 69 N.J. 123 (1976); and (2) deliberating evading the plaintiff after the plaintiff notified the defendant that it intended to exercise its option to purchase a lease, *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*, 182 N.J. 210, 229 (2005).

However, "a plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." *Urbino*, 2015 WL 4510201, at *6 (internal citations omitted). Although a court may infer that Defendant acted with a bad motive, Plaintiff must provide factual support that would allow the Court to draw such a conclusion. *See Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *7 (D.N.J. Sept. 21, 2010) ("Without such factual content, the Court is unable to draw the reasonable inference that Defendants had a bad motive in exercising their discretionary price-making authority.") (internal quotation marks omitted).

Here, outside of "a formulaic recitation of the elements of a cause of action," Plaintiff fails to provide any facts that permit the Court to infer that Verde acted in bad faith when adjusting Plaintiff's monthly rate. *See Iqbal*, 556 U.S. at 678. In fact, as pled, the Complaint appears to allege that Plaintiff's monthly invoices contained PSE&G's monthly rate, which would have permitted him to make an easy comparison with Verde's rate. The information was not hidden from Plaintiff. As a result, Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. Count Three is also dismissed.

### 4. TCCWNA (Count Four)

Defendant argues that the TCCWNA does not create an independent cause of action. Because Plaintiff's CFA claim fails, Defendant maintains that Plaintiff's TCCWNA claim must also be dismissed. Def. Br. at 28.

The TCCWNA provides as follows:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act

> which includes any provision that violates any *clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State of Federal law* at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15 (emphasis added). Thus, "[t]he TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015); *see also Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 68 (2017) ("As the TCCWNA's legislative history reflects, the Legislature did not recognize any new consumer rights but merely imposed an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law.") (internal quotation omitted).

In this instance, Plaintiff's TCCWNA claim is premised on a purported violation of the CFA. Compl. ¶ 85. Because the Court concluded that Plaintiff fails to sufficiently state a CFA claim, his TCCWNA claim cannot survive either. *See Mladenov*, 124 F. Supp. 3d at 360 (dismissing TCCWNA claims that relied on an alleged CFA violation that was also dismissed). Count Four, therefore, is dismissed.

### 5. Unjust Enrichment (Count Five)

Defendant contends that Plaintiff's unjust enrichment claim should be dismissed because there is an express contract between the parties addressing the same conduct at issue in Plaintiff's unjust enrichment claim. Def. Br. at 29-30. To state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010). "[W]here there is an express contract covering the identical subject matter of the claim, plaintiff cannot pursue a quasi-

13

contractual claim for unjust enrichment." *Royale Luau Resort, LLC v. Kennedy Funding, Inc.*, No. 07-1342, 2008 WL 482327, at *10 (D.N.J. Feb. 19, 2008) (brackets and citations omitted). A plaintiff may, however, plead mutually-exclusive, alternative theories of liability. Fed. R. Civ. P. 8(d)(3).

Neither party here disputes the fact that an express contract exists, and it appears to govern the alleged wrongful conduct at issue. Because the subject matter of this dispute is covered by an express contract, Plaintiff's unjust enrichment claim fails. *Royale Luau Resort, LLC*, 2008 WL 482327, at *10. Count Five, therefore, is dismissed.

## V. MOTION TO STRIKE

On July 5, 2018, Plaintiff submitted a notice of supplemental authority distinguishing this Court's opinion in *Coda*. D.E. 31. Defendant submitted a response that discussed an unpublished opinion from the Northern District of Illinois that was issued before Defendant filed its reply brief. D.E. 34-1. Plaintiff seeks to strike Defendant's response, arguing that because Defendant cited to an opinion that was issued before its reply, Defendant's response was an impermissible sur-reply. D.E. 34.

Local Civil Rule 7.1(d)(6) provides that sur-replies are not permitted without the Court's permission. L. Civ. R. 7.1(d)(6). "A court may strike a party's sur-reply if filed without permission from the court." *In re Ford Motor Co. E-350 Van Prods. Liability Litig. (No. II)*, No. 03-4558, 2010 WL 2813788, at *29 (D.N.J. July 9, 2010). However, if "pertinent and significant authorities come to a party's attention after the party's brief has been filed, the party may advise the court of the relevant authority through a Notice of Supplemental Authority." *Atkins v. Capri Training Ctr., Inc.*, No. 13-6820, 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014). Although Verde discussed a case that was decided before it filed its reply brief, Verde did so to demonstrate that

other courts were resolving similar cases like this Court in *Coda*. This was an appropriate response to Plaintiff's notice of supplemental authority. In any event, the Court did not consider Defendant's cited case, *Sevugan v. Direct Energy Services, LLC*, No. 17-6569, 2018 WL 2267806 (N.D. Ill May 17, 2018), so Plaintiff's argument is moot. Accordingly, Plaintiff's motion to strike is denied.

## VI. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (D.E. 13) is **GRANTED** and the Complaint is dismissed. The dismissal is without prejudice and Plaintiff is granted leave to file an Amended Complaint. Plaintiff has thirty (30) days to file an Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to file an Amended Complaint, the dismissal will be with prejudice. In addition, Plaintiff's motion to strike (D.E. 34) is **DENIED**. An appropriate Order accompanies this Opinion.

Dated: March 19, 2019

John Michael Vazquez, U.S.D.J.