Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAY MARSHALL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>VERDE ENERGY USA, INC.,<br><br>*Defendant.* | Civil Action No. 18-1344 (JMV) (JBC)<br><br>**OPINION** |

## John Michael Vazquez, U.S.D.J.

This putative class action alleges deceptive and bad faith practices that resulted in consumers paying more for electricity. The Court previously dismissed the initial Complaint (D.E. 1), *Marshall v. Verde Energy USA, Inc.*, No. 18-1344, 2019 WL 1254562 (D.N.J. Mar. 19, 2019) ("Prior Opinion"). Plaintiff Ray Marshall then filed a First Amended Complaint (the "FAC") (D.E. 50). Presently before the Court is a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Verde Energy USA, Inc. ("Verde"). D.E. 54. Plaintiff filed a brief in opposition (D.E. 56), to which Defendant replied (D.E. 57).[1] After briefing on the motion was complete, both parties filed notices of supplemental authority and responses. D.E. 58-63. The Court reviewed the parties' submissions and decided the motions without oral argument

---

[1] Defendant's brief in support of its motion to dismiss (D.E. 54) will be referred to as "Def. Br."; Plaintiff's opposition (D.E. 56) will be referred to as "Plf. Opp."; and Defendant's reply of its motion (D.E. 57) will be referred to as "Def. Reply."

pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendant's motion to dismiss is **GRANTED** and Defendant's motion to strike is **DENIED**.

I. FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

In New Jersey, a utility company cannot profit from buying and selling energy; it can only profit from delivery. FAC ¶ 15, D.E. 50. Following energy deregulation in New Jersey, however, an independent energy supply company ("ESCO") can profit by buying and selling energy to customers. *Id.* ¶ 16. ESCOs compete to supply energy services in deregulated states, but local utility companies continue to actually deliver the supply. *Id.* ¶ 17. Local utility companies may also supply "metering, billing, and related administrative services to the consumer" regardless of whether an ESCO supplies the energy. *Id.* ESCOs are regulated by New Jersey's Administrative Code, which requires that the terms of service with the consumer meet certain standards. *Id.* ¶ 36.

Defendant is an ESCO that supplies power to residents in New Jersey. *Id.* at ¶¶ 11, 12. Plaintiff decided to switch from his local utility, PSE&G, to an ESCO, Discount Energy Group, LLC ("Discount"), because Discount indicated that Plaintiff would save money on his electricity bill. *Id.* ¶ 46. Nearly a year after making the switch, Plaintiff was notified that his electricity service was being assigned from Discount to Defendant. *Id.* ¶ 47. Shortly after, Plaintiff received a "Welcome Letter" from Defendant, which stated that it "look[ed] forward to saving you money on your monthly electric bills in the months to come." *Id.* ¶ 48, Ex. A. The Welcome Letter added that Defendant has "a strong focus on enabling our customers to save money on their monthly

---

[2] The factual background is taken from the FAC (D.E. 50), as well as the exhibits attached to the Complaint. D.E. 50-1, 50-2. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the FAC. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). In this motion, the exhibits are referenced in the FAC, and the parties agree that both documents are authentic and critical to deciding the current motion.

2

electric bills and in the past three years have helped our over 250,000 customers save an estimated $17 million on their bills." *Id.*, Ex A. Plaintiff does not allege that the representation about past savings was false.

Defendant's Terms of Service for Discount Energy Group Variable Rate Customers (the "Terms of Service" or "Agreement") was contained on the back of the Welcome Letter. In the Terms of Service, Defendant explained that Plaintiff would "receive electricity from Verde at a variable generation rate." The Agreement added that "the rate may fluctuate monthly with market conditions." *Id.* ¶ 49, Ex. B. The Agreement continued that Plaintiff "may compare price terms by looking at the rates posted on Verde's website and on Customer's monthly bill." *Id.*, Ex. B. In fact, Plaintiff's billing invoices appeared to include a "Price to Compare" section that compared Verde's current rate with PSE&G's rate for the month. *Id.* ¶ 57 n. 6.[3] The Agreement further directed Plaintiff to visit Defendant's website "www.lowcostpower.com for current rates and updates." *Id.* ¶ 51. This website contained the statement that Verde was "proud to offer competitive electricity rates for 100% renewable energy." *Id.* ¶ 61. Finally, the Agreement provided that either Plaintiff or Defendant "may cancel this Agreement at any time and for any reason without penalty." *Id.*, Ex. B ¶ 3. Based on these representations, Plaintiff switched to Defendant for electricity in August 2012 and was placed on Defendant's variable rate plan. *Id.* ¶ 54. Plaintiff was a Verde customer from August 2012 to January 2018. *Id.* ¶ 57. Although

---

[3] Plaintiff's original Complaint (D.E. 1) provided more information on this issue. In a chart comparing various rates, Plaintiff indicated that he drew the "Utility Rate" from the "'Price to Compare' provided on Plaintiff's billing invoices." (D.E. 1 ¶ 33 n. 5). This implies that Plaintiff was in fact seeing comparable prices listed on his monthly bills. In the FAC, the chart's rates are explained simply as "PSE&G Price to Compare." Therefore, this Court infers that PSE&G's prices were in fact listed on Plaintiff's monthly bill, as was promised in the Terms of Service.

3

Plaintiff was a customer from August 2012, Plaintiff includes a chart with price comparisons only from October 2016 to December 2017. *Id.*

Plaintiff asserts that based on Defendant's representations relating to competitive rates, "any reasonable consumer would understand that Verde's variable rate would reflect Verde's cost for purchasing electricity at wholesale, and that the variable rate would be competitive with the rate offered by the local utility and other ESCOs." *Id.* ¶ 62. Plaintiff alleges that Verde customers are actually charged rates that are "not based at all on market conditions." *Id.* ¶ 70. Specifically, Plaintiff maintains that Defendant increased the rates charged to Plaintiff and class members when wholesale prices rose but kept prices level when wholesale prices fell. *Id.* ¶ 71. Plaintiff alleges that "there [were] numerous months where Defendant's rate was more than triple the wholesale rate." *Id.* ¶ 70. In addition, Plaintiff contends that Verde's rates "always remain[ed] substantially higher than PSE&G's rates" and, at times, more than eighty percent higher than PSE&G's rates. *Id.* ¶ 67. PSE&G's rates, Plaintiff alleges, are reflective of market conditions because PSE&G purchases energy from a centralized wholesale electricity market and is statutorily required "to set its electricity generation rates at prices consistent with market conditions." *Id.* ¶ 64. Conversely, Plaintiff contends that "Verde has a tactical advantage over PSE&G in providing lower electricity prices to its customers because it can purchase electricity from any number of markets using any number of purchasing and hedging strategies." *Id.* ¶ 69. Of note, although Plaintiff asserts that PSE&G's rates are reflective of market conditions, PSE&G's rates were usually at least twice as high as the wholesale rate and often higher. *Id.* ¶ 57. Also, as noted, Plaintiff appears to assert that PSE&G's rates were provided on his invoices, meaning that he could perform a quick comparison between what he was being charged and what PSE&G was charging. *Id.* ¶ 57 n. 6.

4

Plaintiff filed this putative class action complaint on April 18, 2019 on behalf of all Verde variable rate electric plan customers in New Jersey within the applicable statute of limitations. *Id.* ¶ 99. The Complaint asserts the following claims: (1) violation of the New Jersey Consumer Fraud Act ("CFA" or the "Act"); (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) violation of the Truth-In-Consumer Contract, Warranty, and Notice Act ("TCCWNA"). *Id.* at ¶¶ 104-153. Defendant filed the instant motion to dismiss for failure to state a claim on May 20, 2019. D.E. 54. Additionally, Defendant moves to strike certain allegations in the FAC. *Id.*

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the

facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## III. ANALYSIS

### 1. The New Jersey Consumer Fraud Act (Count One)

The CFA "seeks to protect consumers who purchase goods or services generally sold to the public at large." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006). To state a CFA claim, a plaintiff must allege "(1) unlawful conduct; (2) ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007). Unlawful conduct is defined by the CFA as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission." N.J.S.A. § 56:8-2. As "remedial legislation," the CFA "should be construed liberally." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund*, 192 N.J. at 389.

When a CFA claim is based on a valid, written contract, "a court will dismiss [the] claim" if the conduct alleged is "expressly authorized" by the terms of that contract. *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *3 (D.N.J. July 24, 2015); *see also Hassler v. Sovereign Bank*, 374 F. App'x 341, 344 (3d Cir. 2010) (affirming dismissal of CFA where alleged wrongful conduct was expressly permitted by agreement at issue). Moreover, when a CFA claim is based on a breach of contract, Plaintiff must allege a "substantial aggravating circumstance," demonstrating that the defendant's behavior "stands outside the norm of reasonable business practice in that it will victimize the average consumer." *Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). "Whether a business practice is unfair is a question for the jury, but

6

if the claim is founded on written statements, then the court must make a legal decision whether the practice is unlawful in light of the writings." *Urbino*, 2015 WL 4510201, at *3 (citing *Hassler*, 374 F. App'x. at 344).

In dismissing the CFA claim from Plaintiff's initial Complaint (D.E. 1), the Court concluded that the statement in the Terms of Service that "rates may fluctuate with market conditions" did not guarantee Plaintiff any savings.[4] Prior Opinion at *4. With respect to representations made outside of the Terms of Service, the Court reasoned that Plaintiff's reliance on a "single statement about cost saving from the Welcome Letter" was insufficient to allow for a claim under the CFA. *Id*.

Plaintiff now asserts further information throughout the FAC to demonstrate that Defendant's prices were higher than those of competing service providers. However, Plaintiff has

---

[4] Plaintiff draws the Court's attention to *Silvis v. Ambit Energy, L.P.*, 674 F. App'x 164 (3d Cir. 2017). Plf. Opp. at ¶¶ 14-15. Plaintiff argues that the *Silvis* decision implies that the statement "the rate may fluctuate monthly with market conditions" only gives Defendant discretion to vary rates if according to market conditions. In *Silvis*, two clauses relating to pricing were at issue. One "unambiguously" granted the defendant discretion to set rates, and the other stated that the customer's rate "may vary dependent on price fluctuations in the energy and capacity markets." *Silvis*, 674 F. App'x at 167. The Third Circuit found that this clause was ambiguous as to whether the defendant had "the authority to vary the rates or [whether it] describes the circumstances under which [the defendant] can vary the rates. *Id*. at 168. The *Silvis* court explained that when reading "the two pricing clauses together, the contract is ambiguous as to the discretion afforded [the defendant] in setting rates." *Id*.

Here, the full pricing clause in the Terms of Service is the following: "Customer agrees and understands that the rate may fluctuate monthly with market conditions." D.E. 50-1, Ex. B. This is the only description of how the price may vary. The clause is at most ambiguous and the Court disagrees that it required Defendant to vary its rates based on market conditions. In addition, Plaintiff attempts to limit the definition of "market conditions" to wholesale rates or public utility rates. But the phrase "market conditions" has not been found to be limited to wholesale rates or rates of competitors. *See Coda v. Constellation Energy Power Choice, LLC*, No. 17-3437, 2018 WL 3201796, at *6 (D.N.J. June 29, 2018). *See also Richards v. Direct Energy Services, LLC*, 915 F.3d 88, 98-99 (2d Cir. 2019) (allowing an expansive interpretation of "business and market conditions" beyond "procurement costs").

7

not provided any new and persuasive facts as to how Defendant misrepresented to Plaintiff that its prices would be anything other than what they were.

Plaintiff's most relevant new allegation is that the Defendant's website, lowcostpower.com, and statements contained within, served as material misrepresentations by the Defendant that its service would be low-cost and provide competitive rates. FAC at ¶¶ 113, 114. The key determination is whether these statements are puffery. The CFA "distinguishes between actionable misrepresentations of fact and 'puffery'." *In re Toshiba America HD DVD Marketing and Sales Practice Litigation*, No. 08-939, 2009 WL 2940081, at *8 (citing *Rodio v. Smith*, 123 N.J. 345 (1991)). To determine whether a statement is puffery, courts determine whether the statement is "characterized by 'vague, highly subjective claims' as opposed to 'specific, detailed factual assertions.'" *Melville v. Spark Energy*, No. 15-8706, 2016 WL 677535, at *3 (D.N.J. Nov. 15, 2016) (quoting *Hammer v. Vital. Pharm., Inc.*, No. 11-4124, 2012 WL 1018842, at *7 (D.N.J. Mar. 26, 2012)). Claims of "'substantial savings,' 'low, competitive rates,' 'exceptional value,' and 'great savings'" are not actionable. *Urbino*, 2015 WL 4510201, at *5 n. 7.

While Plaintiff calls attention to the non-specific indication of "competitive" rates on Defendant's website (FAC ¶ 114), he neglects to consider that those descriptions of rates are limited to "100% renewable energy" (FAC ¶ 61). Plaintiff has not alleged that Defendant's rates were not competitive with those of other renewable energy providers. He does note that Defendant's rates were much higher than those of PSE&G and wholesale costs, but with respect to overall competition, only generally notes that Defendant's rates were higher than those of all other ESCOs in 2017. FAC ¶ 114. Even if the representation of "competitive rates" were not limited to renewable energy, it would still not be actionable due to its non-specific nature. In addition, Plaintiff has not alleged that he actually visited the website or read any of the

8

representations contained therein, or that the website contained similar representations when he entered into the contract with the Defendant in August of 2012.

Plaintiff would still need the presence of substantially aggravating circumstances to allow the CFA claim to succeed in the face of a written contract. However, Plaintiff cannot point to any such circumstance other than the fact that Defendant's rates, for a period of Plaintiff's multi-year business relationship with Defendant, were substantially higher than competitors' rates. Defendant's practices were not "outside the norm of reasonable business practice." As this Court has found, Defendant did not promise Plaintiff any savings. Prior Opinion at *4. Moreover, Plaintiff does not provide any specific information that Defendant's rates were higher than those of PSE&G until October 2016, four years after becoming a customer of Defendant in August of 2012. FAC ¶ 57. Plaintiff further does not allege that Verde's rates were higher than those of any other relevant ESCO until 2017. FAC ¶ 76. In making this allegation, Plaintiff cites only a website and does not indicate how much higher Verde's rates were. In opposition, Verde points to similar information and argues that its "average price in 2017 was immaterially higher than several of its competitors[.]" Def. Br. at 11 n. 6. Verde continues that Plaintiff likewise omits that Verde's average price was lower than several of its competitors in 2015 and 2016. *Id.*

As noted in the Prior Opinion, Plaintiff still fails to account for the following circumstances. Each month, Plaintiff's energy bill set forth Verde's rate as well as PSE&G's rate. And Plaintiff contends that PSE&G's rates are an apt comparison. Plaintiff was also free to cancel his agreement with Verde at any time; Plaintiff was not locked into a long-term contract. Thus, Plaintiff could have dropped Verde as soon as he felt Verde was overcharging — and Plaintiff had PSE&G's monthly rate next to Verde's rate to compare. Also, of note, Plaintiff had been a customer of Verde since 2012. While the FAC complains of continuous malfeasance by Verde

9

throughout Plaintiff's contractual arrangement with Defendant, Plaintiff factually provides information beginning only in October 2016 — four years after Plaintiff began using Verde's energy. Plaintiff has not alleged any new, sufficient facts indicating that Defendant made actionable misrepresentations as to the cost of its service or that Defendant's conduct involved substantially aggravating circumstances. Therefore, Plaintiff has failed to adequately plead a claim under the CFA. Count One is dismissed.

### 2. Breach of Contract (Count Two)

Verde contends that the breach of contract claim should be dismissed because Plaintiff fails to plead that Verde breached any actual obligations under the Terms of Service. Def. Br. at 21-23. To state a claim for breach of contract, plaintiff must allege (1) the existence of a contract; (2) breach of the contract (3) damages as a result of the breach; and (4) that plaintiff performed its duties under the contract. *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012). "The plaintiff must also specifically identify portions of the contract that were allegedly breached." *Id.*

Plaintiff does not present any new facts that would allow him to plausibly plead a breach of the Agreement. Plaintiff's principal argument is that the Terms of Service required the Defendant to base its rates on market conditions, which the Defendant did not do, thereby breaching the contract. Plf. Opp. ¶ 17. This argument fails because the Terms of Service did not require Defendant to base its rates on market conditions. Prior Opinion at *4. As discussed above, Plaintiff's arguments regarding the ambiguity of the term "market conditions" (Plf. Opp. at ¶¶ 18-19) are therefore not relevant. Still, Plaintiff has not shown that Defendant failed to base its rates on market conditions, alleging only that Defendant's rates did not track PSE&G's rates or wholesale costs.

10

In a notice of supplemental authority (D.E. 59), Plaintiff directs the Court to a recent Second Circuit ruling, *Mirkin v. XOOM Energy, LLC*, 931 F.3d 173 (2d Cir. 2019). While *Mirkin* is not binding precedent on this Court, the case is nonetheless distinguishable. In *Mirkin*, rather than tying the potential change in rates to "market conditions," XOOM's terms of service expressly provided that the customer's "monthly variable rate [would be] based on XOOM's *actual and estimated supply costs*." *Mirkin*, 931 F.3d at 175 (emphasis in original). XOOM admitted that their energy supply came from wholesale markets. *Id* at 176. The court found it was therefore reasonable to infer that XOOM's actual and estimated supply costs should track the wholesale costs, and that plaintiff had adequately alleged XOOM's rates did not. *See id.* at 177. In this case, the Terms of Service do not require Defendant to base its rates on supply costs. Therefore, this Court cannot reasonably draw the inference that Defendant's rates ought to track wholesale costs.

Plaintiff also makes a new argument relating to breach of contract. He argues that the pricing term in the Terms of Service does not comply with the requirements of the New Jersey Administrative Code § 14:4-7.6(b). FAC ¶ 36. Section 14:4-7(b)(2) (the "Pricing Regulation") provides as follows:

> (b) A TPS [Third Party Supplier] contract shall clearly and conspicuously state that the purpose of the document is to authorize a change in the customer's TPS, and include explicit terms and conditions, which shall include, at a minimum:
> . . . ;
> 2. The price per kWh or therm or, *if a fixed pricing arrangement is not made, a clear and unambiguous statement of the precise mechanism or formula by which the price will be determined*; if the contract contains no particular pricing terms, but rather, expresses the charges for service rendered on a percentage savings basis, the contract language shall clearly and conspicuously state the percentage savings being guaranteed, as well as the price or charges to which the percentage savings is being compared[.]

11

N.J.A.C. § 14:4-7.6(b) (emphasis added). This argument may have some merit because Verde indicated that it would provide electricity at a "variable generation rate" and that "the rate may fluctuate monthly with market conditions." FAC ¶ 49, Ex. B. This statement appears to fall short of a "clear and unambiguous statement of the precise mechanism or formula by which price will be determined" as required by the Pricing Regulation. But Plaintiff fails to sufficiently plead, or argue, the impact of a violation of the Pricing Regulation. For example, does a violation of the regulation mean that the entire agreement was void (or voidable) from inception? If so, what remedy may Plaintiff seek? Plaintiff does claim in the FAC that Defendant violated the Pricing Regulation (FAC at ¶¶ 36-41), but only by way of supporting an interpretation of the pricing term that Plaintiff desires. Plaintiff points to no relevant authority[5] that this alleged violation supports his breach of contract claim. Without a better understanding of Plaintiff's theory as to the applicability of the regulation, and without legal authority to support his position, the Court is left to speculate as to the effect of any alleged violation. Again, this argument may have merit, but the

---

[5] The Third Circuit discussed a Pennsylvania statute somewhat similar to the Pricing Regulation in *Orange v. Starion Energy PA, Inc.*, 711 F. App'x. 681 (3d Cir. 2017). That case involved a variable rate energy contract which was governed by Pennsylvania law. *Id.* at 682.
Pennsylvania law required that an "energy supplier's contract include a statement informing the customer 'on what basis prices will vary.'" *Id.* at 683 (quoting 52 Pa. Code § 54.5(c)(2)(i)-(ii)). The plaintiff alleged that the defendant energy supplier breached the contract by charging an "arbitrary, exorbitant monthly rate far out of line with what the rate would have reasonably been had it been based on the market factors" set forth in the contract. *Id.* The Third Circuit rejected this argument, finding that it was not enough to infer a breach of contract alleging that the rates charged exceeded those of the local utility, since the contract expressly provided that the variable rate could be based on, among other things, market conditions in five separate territories. *Id.* at 683-84. Thus, the issue in *Orange* was different than the one presented here. There, it appears that the energy supplier followed Pennsylvania law by setting forth bases on which the variable rate would be set. Here, by comparison, Plaintiff is alleging that Defendant never included the required information in the contract in the first place.

Court can only analyze its merits if Plaintiff present a clearer articulation (with legal support) of his position.[6]

Plaintiff has failed to state a plausible claim for breach of contract. Count Two is dismissed.

### 3. The Implied Covenant of Good Faith and Fair Dealing (Count Three)

Defendant argues that Plaintiff fails to plausibly plead a breach of the duty of good faith and fair dealing claim because the alleged wrongful conduct is encompassed by the Terms of Service and was not different from that which underlies the alleged breach of contract. Def. Br. at 23. The implied covenant of good faith and fair dealing is a "component of every contract that requires both parties to a contract act in good faith[,]" that is, they must "adher[e] to community standards of decency, fairness, or reasonableness." *Iliadis v. Wal-Mart Stores, Inc.*, 191 N.J. 88, 109 (2007) (internal citations omitted). "[A] breach of the covenant of good faith and fair dealing must not arise out of the same conduct underlying an alleged breach of contract action," however, in certain circumstances, a plaintiff is permitted to plead alternative claims. *CRA, Inc. v. Ozitus Int'l, Inc.*, No. 16-5632, 2017 WL 2779749, at *6-7 (D.N.J. June 27, 2017).

In Count Three, Plaintiff alleges that if Defendant did not breach the express terms of the Agreement, which gave Defendant unilateral discretion concerning Plaintiff's monthly rate, Defendant breached the implied covenant of good faith and fair dealing by arbitrarily and unreasonably exercising its discretion to adjust prices. FAC ¶ 142. Thus, it is possible that while Defendant did not breach an express term of the contract, Verde violated the implied covenant

---

[6] *Richards*, 915 F.3d 88, is instructive. In that case, the plaintiff alleged that a vague pricing term in the contract violated a Connecticut statute outlining required contract terms. However, the Connecticut statute expressly noted that a violation of the statute would constitute an "unfair or deceptive trade practice." *Id.* at 101. The applicable New Jersey regulation contains no such provision.

13

contained in the contract. Consequently, Count Three is appropriately construed as an alternative to Plaintiff's claim for breach of contract.

Defendant maintains that Plaintiff's implied covenant claim must be dismissed because Plaintiff fails to allege sufficient facts to show that Verde acted in bad faith. Def. Br. at 24-25. When a party has the right to exercise discretion under a contract, the discretion must not be used for an improper motive, or "arbitrarily, unreasonably, or capriciously." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001) ("Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage . . . are of no legal significance."). Examples of bad faith conduct that supports an implied covenant claim are (1) purposefully hiding vital information to ensure that the plaintiff continued to perform under the contract even though the defendant knew it was going to terminate the plaintiff's exclusive distributorship arrangement, *Bak-A-Lum Corp. v. Alcoa Bldg. Products.*, 69 N.J. 123 (1976); and (2) deliberating evading the plaintiff after the plaintiff notified the defendant that it intended to exercise its option to purchase a lease, *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Associates*, 182 N.J. 210, 229 (2005).

However, "a plaintiff cannot satisfy the 'improper motive' element of a claim for breach of the covenant of good faith and fair dealing by alleging, without more, that the defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff." *Urbino*, 2015 WL 4510201, at *6 (internal citations omitted). Although the Court may infer that Defendant acted with a bad motive, Plaintiff must provide factual support that would allow the Court to draw such an inference. *See Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 3810870, at *7 (D.N.J. Sept. 21, 2010) ("Without such factual content, the Court is unable to draw the reasonable inference that Defendants had a bad motive in exercising their discretionary price-making authority.") (internal quotation marks omitted).

Here, outside of "a formulaic recitation of the elements of a cause of action," Plaintiff fails to provide any facts that permit the Court to infer that Verde acted in bad faith when adjusting Plaintiff's monthly rate. *See Iqbal*, 556 U.S. at 678. As discussed above, it appears that Plaintiff had the opportunity to compare Verde's rates on a monthly basis with the PSE&G rates and exit the contract at any time. Given that Verde's monthly rate is the crux of Plaintiff's case, the Court cannot infer bad faith when Plaintiff had an opportunity to easily compare the rate with PSE&G's each month. As a result, Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. Count Three is also dismissed.[7]

### 4. TCCWNA (Count Four)

Defendant argues that the TCCWNA does not create an independent cause of action. Because Plaintiff's CFA claim fails, Defendant maintains that Plaintiff's TCCWNA claim must also be dismissed. Def. Br. at 26.

The TCCWNA provides as follows:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any *clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State of Federal law* at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

---

[7] Plaintiff references *Hamlen v. Gateway Energy Services Corporation*, No. 16-3526, 2017 WL 892399 (S.D.N.Y. Mar. 6, 2017) in support of the inference that setting prices higher than competitors allows for a claim of bad faith. *Hamlen* is not binding on this Court and is distinguishable. The contract in *Hamlen* listed a variety of specific considerations that the ESCO would take into account when setting its variable rate. *Hamlen*, 2017 WL 892399, at *1-2. No such specific considerations were set forth here.

15

N.J.S.A. 56:12-15 (emphasis added). Thus, "[t]he TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights." *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 380 (D.N.J. 2015); *see also Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 68 (2017) ("As the TCCWNA's legislative history reflects, the Legislature did not recognize any new consumer rights but merely imposed an obligation on sellers to acknowledge clearly established consumer rights and provided remedies for posting or inserting provisions contrary to law.") (internal quotation omitted).

In this instance, Plaintiff's TCCWNA claim is premised on a purported violation of the CFA. FAC ¶ 152. Because the Court concluded that Plaintiff fails to sufficiently state a CFA claim, his TCCWNA claim cannot survive either. *See Mladenov*, 124 F. Supp. 3d at 360 (dismissing TCCWNA claims that relied on an alleged CFA violation that was also dismissed). Count Four, therefore, is dismissed.

## V. MOTION TO STRIKE

Defendant seeks to strike certain allegations from the FAC for being "irrelevant and immaterial to this action." Def. Br. at 26. Specifically, Defendant seeks to strike statements relating to ESCO regulation in other states. *Id.* Defendant cites only one authority, *Mercado v. Verde Energy USA, Inc.*, No. 18-2068, 2019 WL 978531 (N.D.IL. July 26, 2019), which allowed a motion to strike similar allegations. *Id.* at 26-27. Rule 12(f) of the Federal Rules of Civil Procedure states that a "court may strike from a pleading and insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision is discretionary. *Varonis Systems, Inc. v. Sphere Technology Solutions*, LLC, No. 18-12055, 2019 WL 2119558, at *2 (D.N.J. May 14, 2019) (internal citation omitted). Motions to strike "are usually viewed with disfavor and will generally be denied unless the allegations have no possible

relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Garlanger v. Verbeke*, 223 F.Supp.2d 596, 609 (D.N.J. Sept. 27, 2002) (internal quotations and citations omitted). Because the Court is otherwise dismissing the FAC, it denies this motion as moot. Admittedly, however, the relevance of ESCO regulation in other states is not readily apparent to the Court. Plaintiff seems to be including such information to demonstrate that energy deregulation has, in large part, not resulted in the cost savings originally hoped for. At the same time, Defendant fails to explain how it is unfairly prejudiced by these allegations. The motion to strike is denied.

## VI. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (D.E. 54) is **GRANTED** and the Complaint is dismissed. The dismissal is without prejudice and Plaintiff is granted leave to file an Amended Complaint. Plaintiff has thirty (30) days to file an Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to file an Amended Complaint, the dismissal will be with prejudice. In addition, Defendant's motion to strike (D.E. 54) is **DENIED** as moot. An appropriate Order accompanies this Opinion.

Dated: December 19, 2019

                                                        John Michael Vazquez, U.S.D.J.